# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00481-CV

**Republic Capital Group, LLC, Appellant**

**v.**

**Jason Roberts; Eden Farms Ltd.; Ashley & Jason Inc.; Zachary Potts; Northwoods Energy, LLC; Chanan Corp.; George Atallah; and Saliba Family Trust, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT NO. D-1-GN-15-002254, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This appeal arises from a dispute among business partners that resulted in appellant Republic Capital Group, LLC, filing suit against appellees Jason Roberts, Eden Farms Ltd., Ashley & Jason Inc., Zachary Potts, Northwoods Energy, LLC, Chanan Corp., George Atallah, and Saliba Family Trust.[1] In two pretrial orders, the trial court granted summary judgment on many of Republic's claims, leaving the jury to decide Republic's claims for fraudulent inducement as to the Roberts Parties and breach of contract as to all appellees. The jury found in favor of appellees, and the trial court signed a judgment ordering that Republic take nothing by its claims and awarding attorney's fees to appellees. As explained below, we will affirm the trial court's judgment.

---

[1] We will refer to appellees Jason Roberts, Eden Farms Ltd., and Ashley & Jason Inc. collectively as the "Roberts Parties"; to appellees Zachary Potts, Northwoods Energy, LLC, and Chanan Corp. as the "Potts Parties"; and to appellees George Atallah and Saliba Family Trust as the "Atallah Parties." Patrick McDavid was a plaintiff below but is not party to this appeal.

**Factual and Procedural Summary**

Business partners Patrick McDavid, Zachary Potts, Jason Roberts, and George Atallah, along with their respective businesses, formed a venture to drill and operate saltwater disposal wells. After disputes arose about the management of the various projects, the parties went to mediation, which resulted in a confidential settlement agreement ("the Agreement"). After the Agreement was signed, further disputes arose, and Republic eventually filed this suit,[2] asserting claims for rescission, breach of contract, negligent misrepresentation, negligence, and indemnification, and requesting an accounting and the creation of a constructive trust. Appellees each filed a motion for traditional and no-evidence summary judgment, and Republic filed a "global response" to the motions. The day before the hearing on the motions for summary judgment, Republic filed a second amended petition, adding a claim for fraudulent inducement. About two weeks after the hearing, the trial court signed an order granting summary judgment on Republic's claims for rescission, breach of contract related to a specific real-estate deal, negligence, and negligent misrepresentation. It denied summary judgment as to Republic's claims for breach of contract on several other deals, for indemnity, and for an accounting and a constructive trust.

Appellees next filed amended, supplemental, or additional motions for summary judgment. Republic filed another global response and a third amended petition, asserting claims for fraudulent inducement, breach of contract, negligent misrepresentation, negligence, indemnification, and a "statutory action for fraudulent claim filed against property" under the civil practice and

---

[2] Republic and McDavid originally sued a total of forty-two defendants, but after several nonsuits and amended petitions, the only remaining defendants were the eight appellees.

2

remedies code;[3] it also sought a declaratory judgment construing certain documents. The trial court held a hearing on the second round of motions for summary judgment.[4] Trial began about a month later, and on the last day of trial, the court signed an order granting summary judgment in favor of all appellees as to Republic's claims for negligent misrepresentation and for a fraudulent claim against property against all appellees. It also granted summary judgment in favor of the Atallah Parties on Republic's claim for fraudulent inducement. The court denied appellees' motions for summary judgment as to Republic's request for declaratory judgment and its claim for fraudulent inducement against the Potts Parties and the Roberts Parties.

The jury was then asked whether the Roberts Parties had committed fraudulent inducement and whether any of the appellees had breached the Agreement. The jury returned a verdict in favor of appellees and made findings about the attorney's fees incurred by each party. The trial court entered judgment ordering that Republic should take nothing in its claims against

---

[3] *See* Tex. Civ. Prac. & Rem. Code §§ 12.001-.007 ("Liability Related to a Fraudulent Court Record or a Fraudulent Lien or Claim Filed Against Real or Personal Property").

[4] Due to the central-docket system in Travis County, different judges heard various motions and signed orders throughout the proceeding, and Republic makes much of that fact. However, district courts are authorized to operate on central-docket systems, *see* Tex. Const. art. V, § 11 (authorizing district judges to "exchange districts, or hold courts for each other"); *see also* Tex. R. Civ. P. 330(e) (in county with multiple civil district courts, judges may exchange benches and may determine any case pending in another court or sit as judge in other courts); *In re Schmitz*, 285 S.W.3d 451, 454 (Tex. 2009) (orig. proceeding) (judges may sit for one another whenever they choose). Pursuant to that authority, the Travis County District Courts have passed local rules permitting the operation of a rotating central-docket system. *See* Travis Cty. Dist. Ct. Loc. R. 1.2 (all civil cases other than those on specialized dockets are set on Central Docket), 1.3 (any district judge may conduct hearing). The local rules allow a party to request that a case be assigned to one judge instead of the central docket system (such a request generally "should be made at the beginning of the case"). *See id.* R. 2.6. The record does not reflect that Republic ever made such a request.

appellees and finding that appellees were entitled to attorney's fees under the indemnification clause in paragraph 18 of the Agreement.

In seven points of error, Republic argues that the trial court erred in denying Republic's motion for mediation; in granting summary judgment as to rescission, breach of contract, and negligent misrepresentation; and in awarding attorney's fees to appellees.

## Standards of Review

We review a trial court's decision on a motion for alternative dispute resolution for an abuse of discretion. *See* Tex. Civ. Prac. & Rem. Code § 154.021(a) (trial court "*may*, on its own motion or the motion of a party, refer a pending dispute for resolution by an alternative dispute resolution procedure" (emphasis added)); *Downey v. Gregory*, 757 S.W.2d 524, 525 (Tex. App.—Houston [1st Dist.] 1988, orig. proceeding) (trial court has discretion to decide whether to refer case to alternative dispute resolution). We review a court's decision on a motion for summary judgment de novo. *Tarr v. Timberwood Park Owners Ass'n*, __ S.W.3d __, No. 16-1005, 2018 WL 2372594, at *3 (Tex. May 25, 2018), *Veigel v. Texas Boll Weevil Eradication Found., Inc.*, 549 S.W.3d 193, 196 (Tex. App.—Austin 2018, no pet.). A movant for traditional summary judgment must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, Tex. R. Civ. P. 166a(c); *Veigel*, 549 S.W.3d at 196, and a defendant seeking traditional summary judgment who "conclusively negates at least one essential element of a cause of action is entitled to summary judgment," *Boerjan v. Rodriguez*, 436 S.W.3d 307, 310 (Tex. 2014). A movant for no-evidence summary judgment "contends that no evidence supports one or more essential elements of a claim for which the nonmovant would bear the burden of proof at trial,"

4

and such a motion must be granted if the nonmovant does not raise a genuine issue of material fact on each challenged element. *Id.*; *see* Tex. R. Civ. P. 166a(i) (explaining procedure for no-evidence motion).

### Motion to Mediate

In its first point of error, Republic asserts that mediation was required by the Agreement, that it filed its motion "immediately after the lawsuit was on file," as required by the Agreement, and that the trial court abused its discretion in denying the motion. However, the record does not support Republic's assertions.

The portion of the Agreement on which Republic relies reads as follows:

> Any controversy or claim arising out of or relation to this Agreement, shall first be mediated *prior to the filing of a lawsuit*, with such mediation being performed in good faith by both parties, and with a mediator mutually agreed to between the parties. If the parties are unable to mutually agree on a mediator, either party may file a lawsuit but must simultaneously request that the court appoint an impartial mediator to mediate the controversy and shall extend any answer or other deadlines until after completion of such mediation, the parties may then proceed to litigation in any venue allowed under Texas Law.

(Emphasis added.) Republic, however, did not seek court-ordered mediation until four months after filing suit, and when it did, it sought mediation pursuant to the civil practice and remedies code[5] and the local rules,[6] explicitly stating that it was "not seeking mediation pursuant to the Settlement

---

[5] *See* Tex. Civ. Prac. & Rem. Code §§ 154.001-.073 ("Alternative Dispute Resolution Procedures").

[6] *See* Travis Cty. Dist. Ct. Loc. R. 13.1-13.8 ("Referral of Cases to Alternative Dispute Resolution").

5

Agreement." Further, although the trial court's "Order Denying 'Plaintiffs' Motion Requesting Court-Ordered Mediation'" recited that the court was denying Republic's motion, the order went on to state, "Parties are ordered to schedule a mediation sixty (60) days after the completion of the five primary depositions." Thus, the trial court did not deny mediation—it actually ordered the parties to mediate once certain depositions were taken.

The record demonstrates that Republic delayed its request for mediation until four months after the lawsuit was filed, in contravention of the Agreement's mediation clause, and the trial court did not deny mediation but rather ordered mediation to occur after key depositions were conducted, as it had the discretion to do. *See* Tex. Civ. Prac. & Rem. Code § 154.021(a). Republic has not shown an abuse of discretion in the trial court's order on Republic's motion for court-ordered mediation. *See Downey*, 757 S.W.2d at 525. We overrule Republic's first point of error.

**Summary Judgment as to Rescission**

In its second point of error, Republic argues that the trial court erred in granting summary judgment on Republic's claims for rescission.

Rescission is an equitable remedy allowing for the termination of an agreement if the party can show that it gave timely notice to the other party that the contract was being rescinded and that it returned or offered to return the property received and the value of any benefit derived from its possession. *Carrow v. Bayliner Marine Corp.*, 781 S.W.2d 691, 696 (Tex. App.—Austin 1989, no writ). Thus, an essential element of rescission is that the party show it offered to return any benefits it received under the contract. *Texas Co. v. State*, 281 S.W.2d 83, 91 (Tex. 1955); *Wright v. Lessard*, No. 03-02-00428-CV, 2003 WL 21241592, at *5 (Tex. App.—Austin May 30, 2003, no

pet.) (mem. op.); *see Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 664 (Tex. 2009) (explaining that case law requiring party seeking rescission to "restore the original status" refers to return of money or property received under contract); *Johnson v. Cherry*, 726 S.W.2d 4, 8 (Tex. 1987) ("Restoration or an offer to restore consideration received by one seeking to cancel a deed is a condition precedent to maintaining a suit for cancellation of an instrument."). That rule "is one of justice, designed to ensure that parties do not repudiate an agreement while retaining benefits received by reason of the agreement." *Castillo*, 279 S.W.3d at 665.

Appellees' motions for summary judgment asserted that Republic had received benefits under the Agreement and had not returned or offered to return those benefits. They asserted that there was no evidence Republic had refused or offered to restore any consideration received under the Agreement, pointing to deposition testimony by McDavid, Republic's manager and majority owner, who testified that Republic continued to accept benefits under the Agreement after learning of the facts that Republic claimed were grounds for rescission. He also testified that Republic had not tendered back the received benefits and that appellees had not prevented Republic from doing so. In its global response to the three motions for summary judgment, Republic addressed those arguments by simply stating, "Finally, summary judgment as to Plaintiff's rescission claim must be denied because Plaintiffs are willing to restore any benefits gained from the Settlement Agreement." Such an assertion unsupported by evidence of any attempt or even intention to do so does not raise a fact issue as to the challenged element of rescission. *See id.* at 664; *Johnson*, 726 S.W.2d at 8; *Texas Co.*, 281 S.W.2d at 91; *Wright*, 2003 WL 21241592, at \*5; *Carrow*, 781 S.W.2d at 696.

7

Republic has not shown that the trial court erred in granting summary judgment as to rescission. We overrule Republic's second point of error.

**Summary Judgment as to Breach of Contract**

In its third issue, Republic asserts that the trial court erred in granting summary judgment on its claim for breach of contract. Republic's entire appellate argument as to the granting of summary judgment on breach of contract reads as follows:

> In an order entered July 22, 2016, Judge Sulak of the 353rd District Court granted Appellees' motions for summary judgment on Appellant's breach of contract cause of action, relating to the Fashing deal and other deals from which Appellant was denied rights to significant proceeds. Appellant had argued that Appellees breached the [Agreement] by making an assignment to Appellant that failed to secure Appellant's right in relation to Fashing and other business deals. Appellant argued that Appellees breached the [Agreement] by proposing an assignment to Appellant that failed to secure Appellant's right in relation to numerous deals entered into by the individual Appellees, through their various entities, as guaranteed by the [Agreement]. At a minimum, fact issues existed which were not precluded by the Motions for Summary Judgment presented by Appellees.

Thus, Republic repeats its trial-court arguments in a general way but does not provide this Court with sufficient explanation of how it established that a fact issue existed.[7] Nor does it cite to evidence in the record showing the existence of a fact issue as to breach of contract.[8] Republic has

---

[7] Although Republic characterizes the order as granting summary judgment on its claim for breach of contract "relating to the Fashing deal and other deals," the order was very specific in only granting judgment on this claim relating to the Fashing deal and in denying summary judgment as to Republic's other breach-of-contract claims.

[8] At the beginning of its argument, Republic notes that the trial court excluded certain exhibits at trial because of the pretrial granting of summary judgment on its claims for negligent and fraudulent misrepresentation. It also cites to trial testimony. However, evidence admitted (or excluded) at trial is not relevant to the propriety of the pretrial summary judgment orders.

8

therefore waived any error. *See* Tex. R. App. P. 38.1(i); *Ramsey v. Reagan, Burrus, Dierksen, Lamon & Bluntzer, P.L.L.C.*, No. 03-01-00582-CV, 2003 WL 124206, at *3 (Tex. App.—Austin Jan. 16, 2003, no pet.) (mem. op.). We overrule Republic's third point of error.

### Summary Judgment on Negligent Misrepresentation

In its fourth issue, Republic argues that the trial court erred in granting summary judgment on negligent misrepresentation and fraudulent misrepresentation. However, Republic asserted a claim for negligent misrepresentation, not for fraudulent misrepresentation.[9] We thus consider only whether Republic showed that there was a genuine issue of material fact as to each element of its claim for negligent misrepresentation. *See Boerjan*, 436 S.W.3d at 310.

The elements of a claim for negligent misrepresentation are: (1) a representation made by the defendant in the course of business or a transaction in which he has a pecuniary interest, (2) which provided "'false information' for the guidance of others in their business"; (3) the defendant did not exercise reasonable care in obtaining or conveying the false information; and (4) the plaintiff justifiably relied on the representation and suffered pecuniary loss as a result. *JPMorgan Chase Bank, N.A. v. Orca Assets, G.P., L.L.C.*, 546 S.W.3d 648, 653-54 (Tex. 2018). However, "parties who contractually promise not to rely on extra-contractual statements—more than that, promise that they have in fact not relied upon such statements—should be held to their word."

---

[9] Republic's third amended petition added a claim for fraudulent inducement. The trial court granted summary judgment on that claim as to the Atallah Parties, and granted a directed verdict on that claim as to the Potts Parties. The fraudulent-inducement claim as to the Roberts Parties was submitted to the jury, which found against Republic. Republic does not complain on appeal about any decisions related to the claim for fraudulent inducement.

9

*Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 60 (Tex. 2008). "It is not asking too much that parties not rely on extra-contractual statements that they contract not to rely on (or else set forth the relied-upon representations in the contract or except them from the disclaimer)." *Id*. at 60-61.

In the portion of its second amended petition (the petition on file at the time appellees filed their first round of motions for summary judgment) asserting a claim for negligent misrepresentation, Republic asserted that appellees represented that they would "negotiate the real property transfers and assignments" required under the Agreement in good faith and would execute "additional documents" necessary to effectuate the Agreement; that appellees "supplied false information for the guidance of others"; and that appellees "did not exercise reasonable care or competence in communicating the information," resulting in injury to Republic.[10]

In its response to the motions for summary judgment, however, Republic changed its focus to the following specific representation made by two of the appellees in the Agreement:

> 16. Jason Roberts and George Atallah (the "warranting parties") represent and warrant that they are not currently doing business with the Banks Groups and/or its subsidiaries, including its affiliates, officers, directors, shareholders, partners, owners, members, agents, servants, employees, attorneys, successors or assigns . . . .

---

[10] Republic pointed to Paragraphs 29 and 36 of the Agreement as bases for this claim. Paragraph 29 required each party to execute "additional documents, and instruments in writing as may be necessary, proper or required, desirable, or convenient for the purpose of fully effectuating the terms of this Agreement." Paragraph 36 required each party to "act in good faith in the performance of their obligations under this Agreement," to not "unreasonably delay, withhold or condition any notice approval or similar action required or permitted by this Agreement," and to "act in good faith and use best efforts to achieve the ends of this Agreement."

Republic asserted that contrary to that assurance, at the time the Agreement was being negotiated, the Roberts Parties and the Potts Parties were engaged in dealings or negotiations with the Banks Group; that appellees "were fully aware" of that fact; that appellees knew that the Banks Group "dealings directly affected properties that were subject to" the Agreement and that those dealings would delay execution of the Agreement; and that appellees "orally and falsely represented that there were no such dealings . . . and, moreover, made said representation directly in the Settlement Agreement."[11]  On appeal, Republic likewise focuses only on Paragraph 16 and the alleged misrepresentations related to the Banks Group, asserting that "Appellees promised they were not doing business with the Banks Group."

In addition to the provision noted above, the Agreement also included the following provisions disclaiming any reliance on statements made outside of the contract:

> 25.  It is further understood and agreed that this Agreement contains the entire Agreement of the parties and supersedes any and all prior agreements, arrangements, or understandings between them relating to the subject matter of this Agreement. There are no oral understandings, statements, promises, or inducements contrary to the terms of this Agreement.
>
> 26.  Each party acknowledges that with respect to that party:
>
> (a) such party has received advice from independent legal counsel selected by that party prior to that party's execution of this Agreement;

_____

[11]  In its third amended petition, filed after the trial court granted summary judgment on its claim for negligent misrepresentation, Republic added a claim for fraudulent inducement, asserting that appellees induced Republic to enter into the Agreement by making false statements about their involvement with the Banks Group.  The jury found against Republic on that claim, which as we previously mentioned, is not challenged on appeal.

11

(b) the legal nature and effect of this Agreement has been fully explained to such party by such independent counsel;

(c) such party fully understands the terms and provisions of this Agreement and the nature and effect thereof;

. . .

(f) such party has not relied upon any representation or statements of any other party hereto, any employee of agent of such party, or counsel for any other party hereto in executing this Agreement.

Because the Agreement's provision related to the Banks Group only applied to Roberts and Atallah, even if the Potts Parties had made representations outside of the Agreement, Republic disclaimed its reliance on any such representations and could not later assert a claim for negligent misrepresentation against the Potts Parties. *See McAllen*, 268 S.W.3d at 60-61. The trial court did not err in dismissing that claim against the Potts Parties.

As to the Roberts Parties and the Atallah Parties, Republic's brief provides little explanation of how it showed that a fact issue exists, arguing in relevant part:

Through the warranty in [Agreement] Paragraph 16, Appellees promised they were not doing business with the Banks Group. All Appellees are "parties" as defined in Paragraph 18 of the [Agreement], as noted above. Appellees should be liable for breach of Paragraph 16, individually and through their entities. At the very minimum, issues of fact existed as to whether Appellees supplied false information, whether Appellees exercised reasonable care in their communications, and whether Appellant justifiably relied on the representations given by Appellees in the [Agreement].

Republic does not cite to evidence showing that the trial court erred in granting summary judgment.

12

Even if this Court were obligated to delve into the record or other portions of Republic's brief to find such citations, the somewhat spare record citations provided in Republic's statement of the facts are to trial testimony, not to evidence produced at the summary judgment stage. *See* Tex. R. Civ. P. 166a(c) (trial court shall decide motion for summary judgment based on motion, response, affidavits, deposition transcripts, discovery responses, stipulations, or public records; "[n]o oral testimony shall be received at the hearing"). Further, we are not obliged to independently review the evidence submitted by Republic with its global response to the motions for summary judgment. *See Green v. Port of Call Homeowners Ass'n*, No. 03-18-00264-CV, 2018 WL 4100855, at *6 (Tex. App.—Austin Aug. 29, 2018, no pet. h.) (mem. op.) ("As an appellate court, it is not our duty to perform an independent review of the summary-judgment record for evidence supporting appellants' position."); *King v. Wells Fargo Bank, N.A.*, 205 S.W.3d 731, 734-35 (Tex. App.—Dallas 2006, no pet.) (pleadings do not constitute summary judgment proof and do not create fact issue; "It is not our duty to make an independent search of the voluminous summary judgment record for evidence supporting [appellants'] position."). Republic waived any error related to the trial court's granting summary judgment on its claim for negligent misrepresentation. *See* Tex. R. App. P. 38.1.(i). We overrule Republic's fourth point of error.

### Attorney's Fee Awards

In point of error five, Republic contends that the trial court erred in awarding attorney's fees to appellees because "the only liability question . . . that was submitted to the jury" was answered in the negative. Republic argues that the jury therefore did not find Republic was liable for attorney's fees, and that "[w]ith no predicate jury finding of liability, the trial court erred

in awarding judgment of attorneys' fees" under the Agreement's indemnity clause. In its related sixth point of error, Republic complains that appellees did not seek to submit a jury question that would provide support for the attorney's fee award. Finally, in its seventh point of error, Republic argues that the trial court erred in ordering it to pay appellees' attorney's fees because it is a limited liability company, not an individual or corporation.

"Ordinarily, the allowance of attorney's fees rests with the sound discretion of the trial court and will not be reversed without a showing of abuse of that discretion." *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex. 1990). However, whether a contract will allow for the award of attorney's fees is a question of law that we review de novo. *Fitzgerald v. Schroeder Ventures II, LLC*, 345 S.W.3d 624, 627 (Tex. App.—San Antonio 2011, no pet.). "We construe indemnity agreements under normal rules of contract construction," seeking to "ascertain and give effect to the parties' intent as expressed in the contract." *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000).

Republic asserts that the trial court erred in its attorney's fee awards because appellees did not request or obtain a jury finding as to Republic's liability for attorney's fees. However, in the jury charge, the jury was asked to determine what attorney's fees the various parties had or would incur after being instructed:

> The Court will decide which, if any, party is entitled to receive attorney's fees for this case. However, it is your duty to determine the amount of any reasonable and necessary attorney fees for the services in this case, if any. . . . Any recovery will be determined by the court when it applies the law to your answers at the time of judgment.

14

At the charge conference, Republic stated that it had no objections to the jury charge. Not until in its post-verdict motion for entry of judgment did Republic assert, among other things, that the jury charge did not include a liability question as to whether Republic had breached the Agreement.

The charge stated that the determination of whether any of the parties were entitled to attorney's fees would be decided by the trial court, and Republic did not make the trial court aware in a timely manner of any complaints about the court's intention to reserve that question for itself. Republic cannot now argue that the jury should have answered that question instead of the trial court. *See Wackenhut Corp. v. Gutierrez*, 453 S.W.3d 917, 919-20 (Tex. 2015); *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 829-30 (Tex. 2012); *see also Railroad Comm'n v. Gulf Energy Expl. Corp.*, 482 S.W.3d 559, 571 & n.19 (Tex. 2016) (quoting Tex. R. Civ. P. 278 and noting that failure to submit jury question is not ground for reversal unless error was noted for trial court in either proposed substantially correct question or, if relied on by opposing party, objection).[12] Furthermore, the interpretation of a contract is a question of law for a court, not the jury, to decide.

---

[12] Republic cites to *Bank of Texas v. VR Electric, Inc.*, 276 S.W.3d 671 (Tex. App.—Houston [1st Dist.] 2008, pet. denied), for the proposition that "unless conclusively established by the evidence, a party's failure to submit a properly worded issue, or object to its omission, results in waiver." However, the court in *VR Electric* stated, "Under Rule 279 [of the rules of civil procedure], if a ground is not conclusively established, and at least one element is submitted to and found by the jury, the parties are considered to have agreed to waive a jury trial on the elements that were not submitted, and to have submitted those issues to the trial court for resolution." *Id.* at 676-77. *VR Electric* therefore supports our conclusion that the issue of liability for attorney's fees was properly considered and decided by the trial court.

15

*See Gulf Ins.*, 22 S.W.3d at 423; *UMC, Inc. v. Coonrod Elec. Co.*, 667 S.W.2d 549, 554 (Tex. App.—Corpus Christi 1983, writ ref'd n.r.e.).[13]

We overrule Republic's complaints related to the absence of a "predicate question" on its liability for attorney's fees under the Agreement and now consider whether there was any error in the trial court's determination that Republic was liable for attorney's fees.

In their counterclaims, appellees sought attorney's fees under the indemnity provision contained in the Agreement, and in its final judgment, the trial court stated appellees were "entitled to be awarded their attorneys' fees under the indemnification clause at paragraph 18 of the settlement agreement." We thus start with the indemnification provision, which provided in relevant part:

> 18. It is further understood and agreed that in consideration of the execution of this Agreement, the parties shall indemnify and hold harmless each other, including all affiliates, owners, officers, directors, members, partners, shareholders, employees, contractors, servants, and any other person(s) acting under the parties' direction and/or control, the parties' independent contractors, and successors and assigns, and all persons, natural or corporate, in privity with them or any of them, from any and all expenses, claims, demands, liabilities and causes of action of any kind whatsoever, arising directly or indirectly from: (A) the above Dispute . . . (E) including, without limitation, attorney's fees, expert fees, and court costs, brought by anyone by, through or under the parties either directly or indirectly in the future, it being the purpose of this Agreement that the parties expend no further funds on this Dispute.

---

[13] Republic did not request any findings of fact or conclusions of law from the trial court, and thus we imply all fact findings necessary to support the judgment that are supported by the evidence. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). Republic does not challenge the sufficiency of the evidence supporting any implied findings.

16

Under the broad and plain language of the indemnity clause, the parties, including their affiliated business entities, agreed to indemnify one another for costs, including attorney's fees, incurred directly or indirectly by the dispute that led to the creation of the Agreement.

We can reach no other conclusion than that the parties' subsequent dispute about the Agreement itself arose at least indirectly from the original dispute. Republic sued appellees without having first sought mediation, in violation of the Agreement.[14] Appellees, defendants against Republic's claims, obtained favorable verdicts and judgments against those claims and therefore were the "prevailing parties." *See WWW.URBAN.INC. v. Drummond*, 508 S.W.3d 657, 666-67 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (defendant that successfully defends against claim is entitled to attorney's fees under contractual "prevailing party" clause). The trial court did not err in concluding that Republic was required to indemnify appellees for their attorney's fees. *See Carroll v. Paetznick*, 603 S.W.2d 381, 383 (Tex. App.—Austin 1980, writ ref'd n.r.e.) (interpreting release as indemnification agreement requiring appellants to pay attorney's fees incurred by appellee as result of suit filed by appellants against third party, who then asserted claim against appellee).

As for its argument that the attorney's fee award is improper because appellees did not segregate their fees "among the different defendants, and failed entirely to segregate fees for the work expended on the many claims and causes of action asserted by, against, and among the various

---

[14] Republic again asserts that it "promptly requested mediation" but that the trial court "erroneously denied" that request, "thereby frustrat[ing] the purpose of" the Agreement. However, as explained earlier, Republic did not request mediation until four months after filing suit; it sought mediation under the civil practice and remedies code, not the Agreement; and the trial court in fact ordered mediation to take place after key discovery was conducted. Further, we disagree with Republic's interpretation of the indemnification clause as essentially stating that no party may recover anything further against any of the other parties.

parties," Republic argued before the trial court in its motion for entry of judgment that only the signing parties to the Agreement—Eden Farms, Northwood Energy, and Atallah, as trustee of the Saliba Family Trust—could rely on the indemnification provision and that because the jury determined the fees incurred by the groups of defendants, including non-signatories, it was impossible to determine what part of the attorney's fees were incurred by the parties who could rely on Paragraph 18. However, Paragraph 18 included in its reach "all affiliates, owners, officers, directors, members, partners, shareholders, employees, contractors, servants, and any other person(s) acting under the parties' direction and/or control, the parties' independent contractors, and successors and assigns, and all persons, natural or corporate, in privity with them or any of them." That broad language states that the individuals and other entities affiliated with the signatories are encompassed within the protections of the indemnification provision.

As for its argument, also made in its motion to enter judgment, that the Atallah Parties had not segregated fees incurred "for work on recoverable claims versus non-recoverable claims," Republic is correct that "fee claimants have always been required to segregate fees between claims for which they are recoverable and claims for which they are not."[15] *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006). However, Republic has not attempted to explain what claims would be "non-recoverable," and the Atallah Parties (and all the other appellees) sought attorney's fees under the indemnification provision, which covers "all expenses, claims, demands, liabilities and causes of action of any kind whatsoever, arising directly or indirectly" from the dispute

---

[15] Republic argued that the Atallah Parties had not segregated their fees because of the statement by the attorney: "I felt so bad that I stopped billing at $145,000."

that led to the Agreement's creation. This is not a situation in which the Atallah Parties sought attorney's fees after defending themselves against both a claim for which attorney's fees could be recovered and a claim for which fees may not be recovered. *See* Tex. Civ. Prac. & Rem. Code § 38.001; *Bruce v. Cauthen*, 515 S.W.3d 495, 514 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) ("it has long been recognized that party may not recover its attorney's fees incurred in an action based on a tort claim"). Instead, all of the claims against which the Atallah Parties and the other appellees defended themselves fell within the broad scope of the indemnification provision.

As for any other complaints related to segregation,[16] Republic did not raise those issues before the trial court and may not raise them for the first time on appeal. *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997); *C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 801 (Tex. App.—Houston [1st Dist.] 2004, no pet.). We overrule points of error five and six.

Finally, Republic asserts that the trial court erred in ordering it to pay attorney's fees because it is a limited liability company, not an individual or corporation, and "[u]nder Chapter 38 of the Texas Civil Practice and Remedies Code, attorney's fees can only be recovered from an 'individual' or corporation.'" *See* Tex. Civ. Prac. & Rem. Code §§ 38.001-.006. However, appellees did not seek attorney's fees under chapter 38, nor were they awarded fees under that chapter.

---

[16] Although Republic's phrasing seems to imply otherwise, appellees did not file claims against one another—they each answered Republic's lawsuit and filed counterclaims against Republic for indemnity and attorney's fees. Thus, none of the appellees had to defend against claims filed by another defendant. They only defended themselves against the claims filed by Republic, and each appellee presented evidence about the attorney's fees they themselves had incurred in defending against those claims.

19

Instead, they sought and were awarded fees pursuant to Paragraph 18 of the Agreement, as discussed above.  We overrule Republic's seventh and final point of error.

## Conclusion

We have overruled Republic's seven points of error.  We affirm the trial court's final judgment.

_____

Cindy Olson Bourland, Justice

Before Justices Puryear, Goodwin, and Bourland

Affirmed

Filed:   October 25, 2018